ARQUILLA-DeHAAN REALTORS, Plaintiff-Appellee, *v.* THE VILLAGE OF PARK FOREST *et al.*, Defendants-Appellants.—(AL ODEGARD, Intervening Plaintiff-Appellee.)

First District (4th Division)    No. 80-330

Opinion filed October 16, 1980.

Holleb, Gerstein & Glass, Ltd., of Chicago (Kathleen Field Orr, Ira Gould, and Donald J. Liebentritt, of counsel), for appellants.

Raymond H. Groble, Jr., of Chicago, for appellee Arquilla-DeHaan Realtors.

Angelo A. Ciambrone, of Chicago, for appellee Al Odegard.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Arquilla-DeHaan Realtors and Al Odegard, filed suit in the circuit court of Cook County seeking injunctive and declaratory relief against the defendants, the Village of Park Forest and the members of Park Forest's fair housing review board. The complaints alleged that Park Forest's fair housing ordinances, contained in chapter 24½ of its Code of Ordinances, were void as against real estate brokers and salesmen. The complaints alleged further that the fair housing review board was without territorial jurisdiction to hear certain complaints then pending against the plaintiffs.

The trial court entered summary judgment in favor of the plaintiffs, declaring the fair housing ordinances void in their entirety as to real estate brokers and salesmen. The basis of the motion for summary judgment was that the ordinances were void under the supreme court's decision in *Andruss v. City of Evanston* (1977), 68 Ill. 2d 215, 369 N.E.2d 1258, and that the State has preempted the exclusive power to regulate real estate brokers and salesmen with respect to fair housing.

The defendants agree that those portions of the fair housing ordinances that provide for licensing of real estate brokers and salesmen are invalid under *Andruss.* The defendants also express some reservations about those portions of the ordinances which impose a permit requirement on real estate brokers and salesmen. However, the defendants contend that they have a right to otherwise regulate real estate brokers and salesmen and that consequently the nonlicensing, nonpermit provisions of the fair housing ordinances are valid even as to real estate brokers and salesmen.

The fair housing ordinances provide that no owner, lessor, real estate broker or salesman, financial institution, advertiser, or their agents may discriminate against another because of religion, race, color, sex, age, marital status, or national origin in the sale or rental of real estate. Any discrimination shall be considered an unfair real estate practice. The portion of the ordinances admittedly invalid under *Andruss* provides for licensing of brokers. Of questionable validity under *Andruss* is the provision that brokers who expect to have their agents solicit real estate listings shall register yearly and apply for a broker's solicitation permit.

Nine acts are listed in the ordinances as examples of unfair practices. One ordinance defines certain prohibited acts. The ordinances also provide complaint procedures. Complaints are filed with the village manager. If the complaint is found to have merit, the village manager

may attempt to conciliate the matter. If conciliation is unsuccessful, the matter shall be referred to the fair housing review board for a hearing. The fair housing review board may assess a penalty in the amount of $500. The board may also request that the village president file a complaint with the State of Illinois seeking the revocation of any license issued by the State to violators of Park Forest's fair housing ordinances. The board may request that the president and the board of trustees direct the village prosecutor to file a complaint to recover penalties that it may have assessed or to seek equitable relief. It may also request the president and board of trustees of the village to notify the appropriate contracting agency of the State or Federal government of any violation of the ordinances for purposes of terminating any contracts between the violators and the governmental unit.

The threshold issue is whether the General Assembly has preempted, by its enactment of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, par. 5701 *et seq.*), the exclusive power to regulate real estate brokers and salesmen with respect to fair housing. Section 24 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, par. 5742)[1] declares it to be the public policy of the State that the powers and functions of that act are exclusive powers of the State. Certain portions of the Act provide penalties for housing discrimination. (Ill. Rev. Stat. 1979, ch. 111, par. 5732(e)17-19, 23-24, 26-33; Department of Registration and Education Rule X.) Some of these provisions closely parallel portions of Park Forest's fair housing ordinances. The second paragraph of section 24 of the State statute contains an exception to the preemption of power provision of the first paragraph. It provides that nothing in the Real Estate Brokers and Salesmen License Act shall be

---

[1] Section 24 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, par. 5742) provides:

"It is declared to be the public policy of this State, pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution of 1970, that any power or function set forth in this Act to be exercised by the State is an exclusive State power or function. Such power or function shall not be exercised concurrently, either directly or indirectly, by any unit of local government, including home rule units, except as otherwise provided in this Act.

Nothing in this Section shall be construed to affect or impair the validity of Section 11—11.1—1 of the 'Illinois Municipal Code' approved May 29, 1961, as amended, or to deny to the corporate authorities of any municipality the powers granted in that Act to: enact ordinances prescribing fair housing practices, defining unfair housing practices, establishing Fair Housing or Human Relations Commissions and standards for the operation of such commissions in the administration and enforcement of such ordinances; prohibiting discrimination based on race, color, creed, ancestry, national origin or physical or mental handicap in the listing, sale, assignment, exchange, transfer, lease, rental or financing of real property for the purpose of the residential occupancy thereof; and prescribing penalties for violations of such ordinances."

construed to affect or impair the validity of that portion of the Municipal Code that allows any municipality the power to enact ordinances prescribing fair housing practices, defining unfair housing practices, establishing fair housing or human relation commissions and standards for the operation of such commissions and prohibiting discrimination in real estate practices and that nothing in the Act shall be construed to deny the powers granted by that portion of the Municipal Code.[2]

The plaintiffs give three reasons to support their argument that the State has preempted the exclusive power to regulate real estate brokers and salesmen with respect to fair housing. First, they state that nothing in the paragraph concerning the exception to the exclusive power mentions the terms "real estate brokers" or "real estate salesmen." We see no reason why every paragraph of the Act must specifically mention real estate brokers and salesmen. The very title of the statute is "An act in relation to the definition, registration, and regulation of real estate brokers and real estate salesmen." Its purpose is expressly stated as to evaluate the competency of persons involved in the real estate business. Ill. Rev. Stat. 1979, ch. 111, par. 5701.

Secondly, the plaintiffs point out that the exception to this statute allows ordinances prohibiting discrimination in the "listing, sale, assignment, exchange, transfer, lease, rental or financing of real property." The plaintiffs contend that real estate brokers do none of these things and that therefore the second paragraph does not refer to brokers. However, the Real Estate Brokers and Salesmen License Act includes in its definition of "broker" a person who, among other things, "lists," "sells," "leases," or "rents" any real estate for compensation. (Ill. Rev. Stat. 1979, ch. 111, par. 5706.) Further, in its pleadings below Arquilla states that it "lists for sale and promotes the sale of real estate." We believe the legislative intent was to refer to brokers.

The plaintiffs' last argument concerning preemption is that under the Illinois Constitution (Ill. Const. 1970, art. VII, §6) home-rule units may only enact ordinances on matters of local concern and that this is not a matter of local concern. However, a "home rule" analysis of the issues here presented is not appropriate. The powers concerning fair housing are

---

[2] Section 11—11.1—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—11.1—1) provides in part:
"The corporate authorities of any municipality may enact ordinances prescribing fair housing practices, defining unfair housing practices, establishing Fair Housing or Human Relations Commissions and standards for the operation of such Commissions in the administering and enforcement of such ordinances, prohibiting discrimination based on race, color, religion, sex, creed, ancestry, national origin, or physical or mental handicap in the listing, sale, assignment, exchange, transfer, lease, rental or financing of real property for the purpose of the residential occupancy thereof, and prescribing penalties for violations of such ordinances."

not limited to home rule units. The Municipal Code clearly states that *any* municipality may enact ordinances proscribing discrimination in housing. Similarly, the Real Estate Brokers and Salesmen License Act in its exception provision speaks in terms of *any* municipality.

■■ The Real Estate Brokers and Salesmen License Act means exactly what it plainly says. The State has the exclusive power over real estate brokers and salesmen, but the preemption of power does not affect the power of any municipality to enact fair housing ordinances. The relationship between the State and municipal powers has been refined in the *Andruss* decision. In considering the Real Estate Brokers and Salesmen License Act, the court held that the General Assembly determined that the State has the exclusive power to license real estate brokers and salesmen. The court stated that what was left to the municipalities was the power to enact fair housing ordinances under the fair housing provision of the Municipal Code. (Ill. Rev. Stat. 1979, ch. 24, par. 11—11.1—1.) The court observed that licensing powers were not mentioned in the Municipal Code and that fair housing ordinances "can be enforced by imposing penalties without the power to license real estate brokers and salesmen." *Andruss*, 68 Ill. 2d 215, 219, 369 N.E.2d 1258, 1260.

The plaintiffs next raise the issue of *res judicata*. As we understand it, their first contention is that this very section of Park Forest's code of ordinances was declared void in its entirety by the supreme court in *Andruss*.

In *Andruss*, the plaintiff real estate brokers, on behalf of themselves and all other real estate brokers in Cook County registered under the Real Estate Brokers and Salesmen License Act, sued the city of Evanston and other municipalities including Park Forest. They alleged that the Act preempted the exclusive power to license and regulate real estate brokers and that therefore the municipal ordinances were unconstitutional and unenforceable as against real estate brokers and salesmen. The plaintiffs sought declaratory and injunctive relief and repayment of all licensing fees collected.

The circuit court granted the requested relief except that it reserved the question of a refund. The supreme court affirmed. It stated that the issue before it was whether the licensing of real estate brokers and salesmen "is the exclusive power of the State and beyond that" of a municipality. (*Andruss*, 68 Ill. 2d 215, 217, 369 N.E.2d 1258, 1259.) In holding that such licensing is the exclusive power of the State the court wrote: "[Section 11—11.1—1 of the Illinois Municipal Code] can be enforced by imposing penalties without the power to license real estate brokers and salesmen." We can only construe the opinion in *Andruss* as declaring the licensing provisions of the municipal ordinances void rather

than as declaring the entire ordinances void. We therefore are not persuaded by the plaintiffs' contention that in *Andruss* Park Forest's fair housing ordinances were declared void in their entirety as to real estate brokers and salesmen.

■■ The plaintiffs alternatively contend that the doctrine of *res judicata* is a bar to the defendants' claim because the issue of whether the non-licensing provisions of Park Forest's fair housing ordinances are valid as to real estate brokers and salesmen was raised or "could have been raised" at the trial court level in *Andruss.* However, even if the issue was presented or could have been presented to the trial court, the supreme court clearly decided only the licensing issue. As stated in *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 954, 369 N.E.2d 1363, 1371, "it is the affirming court's determination, not that of the trial court that is *res judicata*—assuming of course that there is any discrepancy between the two."

Further, the pleadings in *Andruss* which are part of the record of this appeal, refute the plaintiffs' arguments. Although the complaint sought a declaration that all attempts by the local authorities to license and regulate real estate brokers were void, the legal basis of the complaint concerned only licensing and registration. Similarly, while the trial court's order referred to licensing and regulation, the trial court's order began by framing the issue as whether the Act preempts local power to require licensing or registration of real estate brokers and salesmen. A court's order or opinion must be read in the context of the facts and issues involved. (*Nix v. Smith* (1965), 32 Ill. 2d 465, 207 N.E.2d 460.) We do not believe the nonlicensing, nonregistration provisions of Park Forest's ordinances were at issue in *Andruss.*

The plaintiffs next assert that during argument below counsel for the defendant village conceded the invalidity of the permit amendment to the fair housing ordinances and of the record-keeping requirements of the original ordinances. During this portion of their brief the plaintiffs described the permit amendment and record-keeping provision. They conclude their argument with the following statement:

"In substance these concessions [that the permit amendment and record-keeping provision are invalid] also concede the invalidity of the provisions of the remainder of the provision of chapter 24-½—ruled upon in the *Andruss* case—which seeks to regulate real estate brokers."

The plaintiffs' brief contains no citation of authority or further analysis on this point. We do not believe that the defendant village's alleged concession to the invalidity of its permit amendment and record-keeping provision constituted a concession to the invalidity of its entire fair housing ordinances. Further, counsel for the village repeatedly stated

during argument below that its concessions of invalidity were only "for the sake of argument."

The plaintiffs' final argument concerns certain complaints filed against them under Park Forest's fair housing ordinances before its fair housing review board. They contend that Park Forest was without territorial jurisdiction to hear these complaints. That Park Forest may have been without territorial jurisdiction to hear certain specific complaints under its fair housing ordinances would not be a basis for affirming the trial court's order that the fair housing ordinances were void in their entirety as to real estate brokers and salesmen. We therefore do not consider the plaintiffs' argument.

■■ This matter is before us as an appeal from an order granting summary judgment in favor of the plaintiffs. The basis of the motion for summary judgment was that Park Forest's fair housing ordinances were void in their entirety as to brokers and salesmen under *Andruss* and that the State has preempted all power to enact fair housing laws as to brokers and salesmen. We conclude that the provisions of Park Forest's fair housing ordinances which do not concern licensing, record-keeping, or permits are not subject to attack on State preemption grounds or on the ground that the provisions are void under *Andruss*. Therefore, we reverse the trial court's order granting the plaintiffs' motion for summary judgment and the cause is remanded for proceedings consistent with this opinion.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

LINN, P. J., and ROMITI, J., concur.