NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2013
Decided March 15, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2752

| | |
|---|---|
| JUDY CARY and WARREN CARY, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 2:12-cv-02059-HAB-DGB |
| CITY OF WATSEKA, ILLINOIS, *Defendant-Appellee*. | Harold A. Baker, *Judge*. |

**O R D E R**

Judy and Warren Cary appeal the dismissal of their civil-rights suit claiming that the City of Watseka, Illinois, violated their right to due process. The Carys allege that the City wanted to acquire their flood-damaged property through eminent domain and, in order to minimize the cost to the City, thwarted their effort to obtain grant funding that would have allowed them to renovate the property. The district court concluded that the doctrine of res judicata bars the Carys' action because they had settled the City's condemnation suit in state court after filing, and then voluntarily dismissing without prejudice, a state-law counterclaim arising from the same factual allegation underlying their federal complaint. Because the Carys' claim is without merit, we affirm the judgment of the district court.

## I. BACKGROUND

The Carys owned a home on a 5,000-square-foot parcel that in 2007 was assessed a value of $54,411. After extensive flooding in 2008, the assessed value of their property dropped to $15,137. Iroquois County, where Watseka is located, was declared a federal disaster area and the Federal Emergency Management Agency provided funding to residents with damaged properties. The Carys received a grant of $28,200, a figure meant to partially compensate them for personal expenses and the drop in their property value.

At the time of the flood, the City already had an easement across the Carys' property for a drainage line, and afterward the City planned a restoration project for that line. In February 2009, the City began negotiating to buy the entire property from the Carys in order to the restore the drainage line. Despite several offers and counteroffers, the City and the Carys were unable to agree on a purchase price.

In the Spring of 2010, the Carys applied for a grant administered through the Ford-Iroquois Department of Public Health to help fund renovations to their property. The maximum amount available was about $30,000, and the Carys believed that work anticipated to cost $42,000 would increase the value of the property to about $61,500. But in June 2010, a representative from the City contacted the Department, stated that the Carys' property was under the City's control, and directed that their grant application not be further processed. When the Carys contacted the Department for an update on their application, they were informed that it had been withdrawn.

Meanwhile, the City filed a complaint for condemnation in Illinois state court in June 2010, seeking to acquire the Carys' property. In their answer, the Carys requested that the complaint be dismissed or, in the alternative, that they be awarded "full and just compensation" for the taking. The Carys also filed a counterclaim alleging that the City, by intentionally interfering with their grant application, had prevented them from renovating their property and increasing its value. The City never answered this counterclaim, instead agreeing to settle its condemnation suit by paying the Carys $13,500 for their property. The Carys voluntarily dismissed their counterclaim and the court granted the parties' Joint Motion and Stipulation for Dismissal of the condemnation suit.

The Carys then brought this action in federal court, claiming that the City's interference with their grant application had violated their right to due process. The City filed a motion to dismiss based solely on the affirmative defense of res judicata. According to the City, the Carys' claim was "the subject of prior litigation in State Court." The district court granted the

motion, noting that the Carys' federal claim is "virtually identical" to the counterclaim they filed in state court, with only a change in legal theory.

## II. ANALYSIS

On appeal, the Carys argue that the district court erred by concluding that their federal lawsuit is barred by the doctrine of res judicata. But although res judicata may not bar their suit, it is clear that their underlying claim lacks merit. The Carys allege that, had the City not interfered with their grant application, they would have been able to renovate their property and the City would have had to compensate them for those renovations. But the premise of this claim—that had the Carys received the grant, they would have been compensated for any improvements they made to the land—is erroneous.

In Illinois the fair market value of property in an eminent domain proceeding is "determined and ascertained as of the date of filing the complaint to condemn." 735 ILCS 30/10-5-60; *see Dep't of Natural Res. of State of Ill. v. Brauer*, 791 N.E.2d 120, 124–25 (Ill. App. Ct. 2003). This general rule fixing the date for valuation of the property prevents the unjust enrichment of property owners due to fluctuations in the value of the property after the petition was filed. *Brauer*, 791 N.E.2d at 125; *see Dep't of Transp. of State of Ill. v. LaSalle Nat'l Bank*, 430 N.E.2d 286, 289 (Ill. App. Ct. 1981). "While a defendant in a condemnation action continues to have ordinary use of property after the commencement of the proceedings, the owner cannot make substantial changes in the condition of the property" that would increase its value and allow for an unfair profit. *Brauer*, 791 N.E.2d at 125. Instead the owner is put "in as good financial condition as he was" when the property was condemned. *Peoples Gas Light & Coke Co. v. Buckles*, 182 N.E.2d 169, 176 (Ill. 1962); *see Brauer*, 791 N.E.2d at 125.

Thus, once the City filed its complaint in state court in June 2010, the Carys could not be compensated for future improvements that they were planning to make to the land. The Carys do not dispute that they received the fair market value of their property at the time of the condemnation, and that was all they were entitled to under Illinois law. We need not reach the issue of res judicata.

**AFFIRMED**.